IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

Keith R. Sumpter,                            )
      Plaintiff,                          )        Case No. 6:12-cv-03643-TMC-JDA
                                             )
      v.                                  )        **REPORT AND RECOMMENDATION**
                                             )        **OF MAGISTRATE JUDGE**
City of Mauldin and Raymond C. Eubanks, )
III,                                         )
      Defendants.                         )
_____ ) ___

This matter is before the Court on Defendants' motion for summary judgment. [Doc. 29.] Plaintiff filed this action alleging discrimination and retaliation claims pursuant to 42 U.S.C. §§ 1981 and 1983; the Age Discrimination in Employment Act ("ADEA")[1]; and Title VII of the Civil Rights Act of 1964, as amended ("Title VII").[2] Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A), and Local Civil Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

## BACKGROUND

Plaintiff, a former employee of the City of Mauldin, filed this action on December 27, 2012, alleging Defendants Raymond C. Eubanks, III ("Eubanks") and the City of Mauldin ("the City") (collectively, "Defendants") unlawfully discriminated against Plaintiff based on

---

[1]Although the Complaint does not expressly mention the ADEA, Plaintiff cites to 29 U.S.C. § 626, which concerns the recordkeeping, investigation, and enforcement functions of the Equal Employment Opportunity Commission under the ADEA. Accordingly, out of an abundance of caution, the Court treats this case as alleging a claim under the ADEA.

[2]Although the Complaint's "Cause of Action" section references 29 U.S.C. § 211 (dealing with the collection of data under the Fair Labor Standards Act) and 42 U.S.C. § 12117 (dealing with enforcement under the Americans with Disabilities Act) in addition to the claims listed above, the allegations in the Complaint clarify Plaintiff's causes of action are limited to discrimination and retaliation claims under §§ 1981 and 1983, the ADEA, and Title VII. The Complaint contains no allegations regarding wage-based or disability-based claims.

his race, sex, and/or age and unlawfully retaliated against Plaintiff by suspending and ultimately terminating his employment. [Doc. 1.] Plaintiff began his employment with the City in 1999.[3] [Doc. 29-2 ¶ 5; Doc. 30-2 ¶ 3.] Plaintiff signed an acknowledgment on August 31, 2000 that he attended a training course about the City's Personnel Policies and Procedures Manual. [Doc. 29-2 at 11.] Included in those policies is a policy prohibiting sexual harassment. [*Id.* at 7–9.]

In October 2010, Plaintiff was placed on leave, which Plaintiff calls a suspension. [Doc. 29-2 ¶ 11; Doc. 30-2 ¶ 10.] Plaintiff was terminated on November 3, 2010. [Doc. 29-2 ¶ 14; Doc. 30-2 ¶ 11.]

Plaintiff avers that, during his employment with the City, he was treated less favorably and differently from other employees based on his race, sex, and age with respect to office space, computer training, CDL training, and being assigned less to record time at sporting events.[4] [Doc. 30-2 ¶¶ 7–8.] Plaintiff further avers that, in October 2010, Plaintiff reported to his supervisor, Van Brannon ("Brannon"), about misappropriation of funds and equipment by a coworker[5] [*id.* ¶ 9] and that Plaintiff's suspension and termination were retaliation for this report [*id.* ¶¶ 10,11].[6] Additionally, Plaintiff avers that

---

[3]Although the Complaint alleges Plaintiff began his employment with the City in 1994, his subsequently filed response in opposition to the motion for summary judgment and affidavit both concede he began his employment in 1999. [Docs. 30-1 at 1; 30-2 ¶ 3.]

[4]The Court notes that much of Plaintiff's affidavit and facts section in his response in opposition to the motion for summary judgment are copied substantially verbatim from the Complaint. [*Compare, e.g.*, Doc. 1 ¶¶ 7–8, *with* Docs. 30-1 at 1–2; 30-2 ¶¶ 7–8.]

[5]Plaintiff also told Brannon that Plaintiff would report the matter elsewhere if it was not addressed, "based solely upon race, sex and/or age under [Plaintiff's] protected employment activity." [Doc. 30-2 ¶ 9.]

[6]Plaintiff appears to allege that his suspension and termination were both in retaliation for his reporting the misappropriation of funds and equipment and also based upon Plaintiff's race, sex, and/or age. [Doc. 30-2 ¶¶ 10–11.]

2

his suspension and termination were treated differently from the suspension and termination of a Caucasian employee who was placed on paid leave because Plaintiff was suspended without pay.  [*Id.*]

The City contends Plaintiff was placed on paid leave pending an investigation[7] of reports by a female coworker that Plaintiff had sexually harassed her in October 2010.[8] [Doc. 29-2 ¶¶ 10–11; *id.* at 5; Doc. 29-3 ¶ 4.]  Brannon conducted an investigation regarding the sexual harassment complaint, and he determined that the female coworker was telling the truth; he further determined that Plaintiff was not telling the truth when he denied the allegations regarding sexual harassment.  [Doc. 29-3 ¶¶ 5–11; Doc. 29-2 ¶¶ 13-14.]  Accordingly, Brannon recommended that Plaintiff be terminated.  [Doc. 29-3 ¶ 12.]

Defendants filed a motion for summary judgment on July 25, 2013.  [Doc. 29.] Plaintiff filed a response in opposition to the motion on August 12, 2013.  [Doc. 30.] However, the Court notes much of Plaintiff's response in opposition is copied substantially verbatim from Defendants' memorandum in support of the motion for summary judgment, except Plaintiff uses the same citations to reach the opposite conclusions of Defendants; Plaintiff cites to only the cases cited by Defendants in their memorandum of law in support

---

[7]Although in one section of Plaintiff's affidavit, he denies that the City received a report of sexual harassment by Plaintiff [Doc. 30-2 ¶¶ 12–14] and in another section of the affidavit, Plaintiff avers Defendant suspended him without pay and dismissed him without interviewing Plaintiff or any witnesses [*id.* ¶ 11], in a third section of the affidavit, he concedes that Defendants met with him about the allegations [*id.* ¶ 15].

[8]Defendants aver they received the first complaint of sexual harassment in May 2010.  [Doc. 29-2 ¶¶ 8–9; *id.* at 5; Doc. 29-3 ¶ 3.]  Plaintiff appears to challenge whether Defendants received a complaint in May 2010 [Doc. 30-1 at 3 ("Defendants conceded that it did nto discuss [Plaintiff's coworker's] unfounded incredible allegation with Plaintiff – who argues that any such fabricated allegation did not exist prior to this case by Plaintiff.  Further, there is no evidence that Defendants discussed these allegations with [Plaintiff's coworker] and, with her agreement, decided to monitor Plaintiff's conduct; and/or Defendants instructed [Plaintiff's coworker] to immediately report any further alleged incidents of harassment.").]

of the motion for summary judgment and provides the Court with no additional legal

authority. [*Compare, e.g.*, Doc. 29-1 at 6–7

> Regardless of how a termination claim is framed (based on race, based on harassment, or based on retaliation) the claim is defeated if the employer offers a legitimate non-discriminatory reason which the plaintiff cannot rebut. *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) (en banc); *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985); *Mays v. City School Bd. For the City of Lynchburg*, 5 Fed. Appx. 181 (4th Cir. 2001).,

*with* Doc. 30-1 at 7

> An employer may not defeat a claim if it merely shows a pre-textually legitimate non-discriminatory excuse which the plaintiff can rebut. *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) (en bane); *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985); *Mays v. City School Bd. For the City of Lynchburg*, 5 Fed. Appx. 181 (4th Cir. 2001).]

The motion is now ripe for review.

## APPLICABLE LAW

**Summary Judgment Standard**

Rule 56 states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would

affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such

that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When

determining whether a genuine issue has been raised, the court must construe all

4

inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

5

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

**Discrimination Claims**

As previously stated, Plaintiff alleges he was treated less favorably and differently based on his race, sex, and age and appears to allege that his suspension and termination were based on Plaintiff's race, sex, and age.  Defendants argue they are entitled to summary judgment because they had a legitimate, nondiscriminatory reason to terminate Plaintiff—the allegation and investigation of sexual harassment by Plaintiff.  The Court agrees Defendants are entitled to summary judgment with respect to Plaintiff's discrimination claims.

Plaintiff brings his claim of race discrimination under Title VII and §§ 1981 and 1983[9]; his claim of sex discrimination under Title VII; and his claim of age discrimination under the ADEA.  As the Fourth Circuit Court of Appeals has explained in the wake of *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), a Title VII plaintiff may "avert summary judgment . . . through two avenues of proof."  *Hill v. Lockheed Martin Logistics Mgmt., Inc.*,

---

[9]Section 1983 provides the exclusive remedy for violations of § 1981. *Jett v. Dallas Independent Sch. Dist.*, 491 U.S. 701, 733 (1989) ("[T]he express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units . . . .").

6

354 F.3d 277 (4th Cir. 2004). First, a plaintiff may survive a motion for summary judgment "by presenting direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor . . . motivated the employer's adverse employment decision." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005). Alternatively, a plaintiff may proceed under the *McDonnell Douglas* "pretext" framework.[10] *Id.* (quoting *Hill*, 354 F.3d at 285). Under this framework, an employee must first prove a prima facie case of discrimination.[11] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the plaintiff succeeds, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action. *Id.* By providing such an explanation, the employer rebuts the presumption of discrimination created by the prima facie case, and "[t]he presumption, having fulfilled its role of forcing the [employer] to come forward with some response, simply drops out of the picture." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510–11 (1993) (citing *Tex. Dep't of Cmty. Affairs*

---

[10] The standards applicable to suits under Title VII are also applicable to suits brought under § 1983. *Gairola v. Commonwealth of Va. Dep't of Gen. Servs.*, 753 F.2d 1281 (4th Cir. 1985).

The ADEA does not provide that a plaintiff may establish discrimination by showing age was simply a motivating factor in an employment decision. The ordinary meaning of the ADEA's requirement that an employer took adverse action "because of" age is that age was the "reason" that the employer decided to act; accordingly, under the ADEA, a plaintiff must prove age was the "but-for" cause of the employer's adverse decision. *Gross v. FBL Fin. Svcs., Inc.*, 557 U.S. 167 (2009). Although the Supreme Court has left undecided whether the *McDonnell Douglas* framework applies in an ADEA case, *id.* at 2351 n. 4, the Fourth Circuit has generally applied the *McDonnell Douglas* framework to ADEA cases, *see, e.g., Hill*, 354 F.3d 277 (applying *McDonnell Douglas* framework to ADEA case).

[11] To establish a prima facie case of discrimination, a plaintiff must demonstrate (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was performing his job duties at a level that met the employer's legitimate expectations at the time of the adverse employment action; and (4) other employees who are not members of the protected class did not suffer the adverse employment action under similar circumstances. *See Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 133 (4th Cir. 2002); *see also EEOC v. Sears Roebuck & Co.*, 243 F.3d 846, 851 n. 2 (4th Cir. 2001) ("What is critical with respect to the fourth element is that the plaintiff demonstrate he was not hired (or fired or not promoted, etc.) 'under circumstances which give rise to an inference of unlawful discrimination.'" (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981))).

*v. Burdine*, 450 U.S. 248, 255 (1981)). If the employer articulates a legitimate, nondiscriminatory reason, the burden shifts back to the employee to show that the articulated reason was actually a pretext for retaliation. *McDonnell Douglas*, 411 U.S. at 804; *see also Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007).

However, the Fourth Circuit has emphasized that, "[r]egardless of the type of evidence offered by a plaintiff as support for her discrimination claim (direct, circumstantial, or evidence of pretext), or whether she proceeds under a mixed-motive or single-motive theory, '[t]he ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination.'" *Hill*, 354 F.3d at 286 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 153 (2000)). Further, the court stated,

> To demonstrate such an intent to discriminate on the part of the employer, an individual alleging disparate treatment based upon a protected trait must produce sufficient evidence upon which one could find that "the protected trait . . . actually motivated the employer's decision." *Reeves*, 530 U.S. at 141, 120 S.Ct. 2097 (internal quotation marks omitted). The protected trait "must have actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome." *Id.* (internal quotation marks and alterations omitted); *cf. Price Waterhouse [v. Hopkins ]*, 490 U.S. [228,] 277, 109 S.Ct. 1775 (O'Connor, J., concurring) (noting that "statements by nondecision makers, or statements by decisionmakers unrelated to the decisional process itself [do not] suffice to satisfy the plaintiff's burden" of proving discrimination); *Koski v. Standex Int'l Corp.*, 307 F.3d 672, 678 (7th Cir. 2002) (noting that the pertinent inquiry is whether the decision maker, as opposed to other managers or subordinates, evaluated the aggrieved employee based upon discriminatory criteria).

8

*Id.* Thus, whether a plaintiff proceeds under the first or second avenue of proof, the plaintiff's ultimate burden is to demonstrate the employer's adverse employment action was motivated, at least in part, by discrimination.

Here, Plaintiff does not attempt to survive summary judgment using direct or circumstantial evidence of discrimination.[12]  Moreover, Defendants do not make any argument with respect to the prima facie case under the *McDonnell Douglas* burden-shifting scheme.  Instead, Defendants argue they had a legitimate, nondiscriminatory reason for suspending and terminating Plaintiff—the allegation and investigation of sexual harassment by Plaintiff.[13]

---

[12]Although Plaintiff's response in opposition states, "This is both a direct and circumstantial evidence case," it goes on to state, "To prove a circumstantial case of termination, Plaintiff can show evidence (a 'prima facie' case) that meets the following criteria . . . ."  [Doc. 30-1 at 7.]

[13]The Court is not convinced Plaintiff has established a prima facie case of discrimination because the Court is not convinced Plaintiff has established the fourth element—that other employees who are not members of the protected class did not suffer the adverse employment action under similar circumstances or, stated differently, that plaintiff was terminated under circumstances which give rise to an inference of unlawful discrimination.  However, as one court within the Fourth Circuit has noted, "[t]he relevance of the *McDonnell Douglas* scheme outside of the trial context is limited." *Lerner v. Shinseki*, No. ELH-10-1109, 2011 WL 2414967, at *14 (D. Md. June 10, 2011).  The Fourth Circuit has observed,

> Notwithstanding the intricacies of proof schemes, the core of every Title VII case remains the same, necessitating resolution of "the ultimate question of discrimination *vel non*." *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983). As the Supreme Court has explained, "[t]he ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 153, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Thus, "[c]ourts must . . . resist the temptation to become so entwined in the intricacies of the [ *McDonnell Douglas* ] proof scheme that they forget that the scheme exists solely to facilitate determination of 'the ultimate question of discrimination *vel non*.' " *Proud v. Stone*, 945 F.2d 796, 798 (4th Cir. 1991) (citation omitted).

*Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294–95 (4th Cir. 2010).  Further, the Supreme Court has stated,

> Where the defendant has done everything that would be required of him if the plaintiff had properly made out a *prima facie* case, whether the plaintiff

9

Defendants received a complaint that Plaintiff had sexually harassed a female coworker in October 2010.[14]   [Doc. 29-2 ¶¶ 10–11; *id.* at 5; Doc. 29-3 ¶ 4.]   Brannon conducted an investigation regarding the sexual harassment complaint.   He noted that Plaintiff's coworker was obviously upset and teared up during their interview.   Brannon was familiar with her work performance and with Plaintiff's and was aware of no reason why Plaintiff's coworker would lie about Plaintiff.   He further found the specific words Plaintiff's coworker reported and her straight forward demeanor indicated something improper had occurred.   Accordingly, Brannon found Plaintiff's coworker to be credible.   [Doc. 29-3 ¶¶ 5–6.]   In contrast, when Brannon met with Plaintiff and informed him of the allegations, although Plaintiff denied the allegations of sexual harassment, Brannon found the denials to be general and without further substance.   Plaintiff became combative and defensive, spent much time discussing unrelated issues and accusing Brannon of being out to get Plaintiff and trying to provoke Plaintiff to anger.   Further, Plaintiff gave no reason why

_____

really did so is no longer relevant.  The district court has before it all the evidence it needs to decide whether "the defendant intentionally discriminated against the plaintiff."

*Aikens*, 460 U.S. at 715 (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)); *see Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008) ("The *Aikens* principle applies, moreover, to summary judgment as well as trial proceedings.").  In light of this guidance from the Supreme Court and the Fourth Circuit, the Court agrees with the District of Maryland that where the employer has met its burden of articulating a legitimate, nondiscriminatory reason for its adverse action against the plaintiff, the Court may assume, without deciding, that the plaintiff has established a prima facie case of discrimination.  *Lerner*, 2011 WL 2414967, at *14.

[14]As previously noted, Defendants have also put forth evidence in the form of affidavits and a written statement by the victim that she first complained of sexually harassing behavior by Plaintiff in May 2010.  [Doc. 29-2 ¶¶ 8–9; *id.* at 5; Doc. 29-3 ¶ 3.]  Plaintiff appears to challenge this assertion and, although he has relied only on his own conclusory allegation that there was no complaint in May 2010, *see Ross v. Commc'ns Satellite Corp.*, 759 at 365 (holding that conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion), for purposes of this motion for summary judgment, Plaintiff's concession that Defendants received a complaint of sexual harassment in October 2010 is enough to establish a legitimate nondiscriminatory reason for suspending and terminating Plaintiff.

Plaintiff's coworker might lie.[15]  [*Id.* ¶¶ 8–11.]  Accordingly, Brannon recommended that Plaintiff be terminated.  [Doc. 29-3 ¶ 12.]  Based on this explanation, the Court concludes Defendants have met their burden under *McDonnell Douglas* to produce evidence from which a jury could conclude Defendants had a legitimate, nondiscriminatory reason for suspending and terminating Plaintiff.  Accordingly, the Court will consider whether Plaintiff has met his burden of demonstrating that Defendants' proffered reason is merely a pretext for discrimination, which would indicate whether Plaintiff could meet his ultimate burden of persuasion and demonstrate discrimination *vel non*.  *See Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010) ("The final pretext inquiry 'merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination,' which at all times remains with the plaintiff." (alteration in *Merritt*) (quoting *Burdine*, 450 U.S. at 256)).

To prove an employer's articulated reason is a pretext for discrimination, a plaintiff "must prove '*both* that the reason was false, *and* that discrimination was the real reason' for the challenged conduct."  *Jiminez v. Mary Wash. Coll.*, 57 F.3d 369, 378 (4th Cir. 1995) (emphasis in original) (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 515).  Upon review of the record, the Court determines Plaintiff has failed to demonstrate a genuine issue of material

---

[15]Although the parties disagree as to whether Plaintiff refused to offer a written statement [*Compare* Doc. 29-2 ¶ 12 (stating Plaintiff refused to provide a written statement), *with* Doc. 30-2 ¶¶ 15, 18 (stating Plaintiff attempted to respond in writing and that he took a written statement to his termination meeting but Defendants never asked for it)], a review of Brannon's affidavit reveals that Brannon did not base his decision to recommend that Plaintiff be terminated on Plaintiff's failure to provide a written statement [Doc. 29-3]. Brannon's affidavit does not mention a written statement or the failure to provide a written statement at all. [*Id.*] Instead, Brannon based his decision to credit Plaintiff's coworker and discredit Plaintiff on their demeanor and statements in the interviews Brannon conducted as part of his investigation.  [*Id.* ¶ 11–12.]

fact as to whether Defendants' proffered reason for suspending and terminating Plaintiff is merely a pretext for discrimination.

When determining whether an articulated reason is pretextual, "[i]t is the perception of the decision maker which is relevant." *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 445 (4th Cir. 1998), *overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002). The Fourth Circuit has addressed the situation where a plaintiff disagrees with the facts underlying a decision maker's assessment of the employee. *Hawkins v. Pepsico, Inc.*, 203 F.3d 274 (4th Cir. 2000). In *Hawkins*, the employer argued it terminated the plaintiff because she performed poorly in her special projects capacity and failed to improve even after receiving negative feedback. *Id.* at 279. The plaintiff claimed the employer's criticisms were inaccurate and insisted she performed her job well. *Id.* The court held the plaintiff could not show the employer's stated reasons for terminating her were not the real reasons for her discharge, noting "'it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for plaintiff's termination.'" *Id.* (citing *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) (internal quotation marks omitted in *Hawkins*)); *see id.* at 280 ("But instead of producing evidence that shows [the supervisor's] assessment of her performance was dishonest or not the real reason for her termination—as the law requires—[the plaintiff] disputes the merits of [the] evaluations.").

12

In his response in opposition to the motion for summary judgment, Plaintiff contends that Defendants "persuaded [Plaintiff's coworker] to complain about Plaintiff"[16] and that they found Plaintiff's coworker credible "solely based upon the fact that she is a Caucasian female and Plaintiff is an older African-American male." [Doc. 30-1 at 4.] Although Plaintiff attempts to create issues of fact regarding whether Brannon's conclusion following the investigation was correct and/or fair, Plaintiff has failed to produce evidence, other than his own conclusory allegations, that Brannon did not believe Plaintiff's coworker and did believe Plaintiff or that Brannon's conclusion and recommendation were inappropriately based on Plaintiff's race, sex, and/or age.[17]  *See Hooker v. Hilton Hotels Corp.*, Civil Action No. ELJ-10-3019, 2012 WL 2798768, at *15 (D. Md. July 6, 2012) ("To be sure, if [the employer's] credibility determination was incorrect, and [the plaintiff] did not sexually harass his co-worker, his termination was extraordinarily unfortunate.  But, without more, this does not constitute a violation of Title VII.").  Accordingly, summary judgment should be granted on Plaintiff's discrimination claims.

---

[16]Notably, Plaintiff contends Defendants persuaded his coworker "in retaliation to Plaintiff's report to his supervisor Van Brannon the misappropriation of funds and equipment by co-workers who violated the policy of Defendant City of Mauldin."  [Doc. 30-1 at 4.]

[17]To the extent Plaintiff attempts to establish pretext by comparing himself to a Caucasian male employee who was terminated almost two years later after he was accused of not allowing a women applying for a job to leave the building [Doc. 30-1 at 5, 14–16; Doc. 30-2 ¶ 11], Plaintiff has not established that employee is similarly situated to Plaintiff to be used as a comparator, *Edwards v. Newport News Shipbuilding*, 166 F.3d 1208 (4th Cir. 1998) (unpublished table decision) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992) for the proposition that to be similarly situated, employees must have the same supervisors and must have engaged in the same conduct without differentiating or mitigating circumstances).  Moreover, the alleged comparator is male and over 40; thus, even if he were similarly situated, he could be used to establish pretext only with respect to Plaintiff's race discrimination claim.

**Retaliation Claims**

Plaintiff alleges that his suspension and termination were in retaliation for his reporting that another employee misappropriated funds and equipment. Defendants argue they are entitled to summary judgment because they had a legitimate, nondiscriminatory reason to terminate Plaintiff—the allegation and investigation of sexual harassment by Plaintiff. The Court agrees Defendants are entitled to summary judgment with respect to Plaintiff's retaliation claims.

The *McDonnell Douglas* burden-shifting framework applies to retaliation claims as well. *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 248 (4th Cir. 2000). Here, as discussed above, Plaintiff has failed to present any evidence of pretext following Defendants' articulated legitimate, nonretaliatory explanation for suspending and terminating Plaintiff's employment—the allegation and investigation of sexual harassment by Plaintiff.[18] Accordingly, summary judgment should be granted on Plaintiff's retaliation claims.

## <u>RECOMMENDATION</u>

Wherefore, based upon the foregoing, the Court recommends that Defendants' motion for summary judgment be GRANTED.

---

[18]The Court is not convinced Plaintiff has established a prima facie case of retaliation. To establish a prima facie case of retaliation, a plaintiff must demonstrate "(1) she engaged in a protected activity, (2) the employer acted adversely against her, and (3) there was a causal connection between the protected activity and the asserted adverse action." *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011); *Holland*, 487 F.3d at 218. A plaintiff has engaged in protected activity if "he has 'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'" *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 59 (quoting 42 U.S.C. § 2000e–3(a)). The Court is not convinced Plaintiff engaged in protected activity because he alleges he was retaliated against for reporting that a coworker had misappropriated funds and equipment. As Defendants have pointed out in their reply memorandum, misappropriations of funds and equipment has nothing to do with any protected characteristic such as race, sex, or age.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

January 30, 2014
Greenville, South Carolina